Isaacs v. Konawa Public Schools v. Ebel, Judge Bacarach, Good morning. May I reserve four minutes for my rebuttal, please? May it please the court. This is a case of danger creation and deliberate indifference by the Konawa School District and Mr. Scoggins, Joseph Scoggins, who are the individually named, he's an individually named defendant. On March 8th, Wendy Isaacs was driving back, she was riding on a bus back from Konawa. They had played a softball game and they were on the way back. As they were driving southbound, they saw a car coming in the southbound lane headed northbound and that car remained in the southbound lane until the impact. Now, Joseph Scoggins, who was the driver of the bus, who was the coach, who had taught all day, starting at 5 o'clock in the morning, reporting to school to drive his bus route, saw the oncoming vehicle. But there was nothing in the record that he dozed off or was sleepy. In fact, I bet observing that, the last thing he was was drowsy or sleepy at that moment. No, there's no evidence that he was drowsy or sleepy. But what he did is in the face of that oncoming vehicle, he implemented, he put a plan in his mind and his plan that he decided to avoid the crash was to impact it. So he developed a plan to impact the oncoming vehicle at the back of the bus. Then he communicated that plan to the softball players and then he implemented that plan. May I ask you, did the evidence show whether there were passengers in the bus, at the back of the bus? There were six other, there were six people in total. I know, but that wasn't my question. I don't know how many seats are in the bus. Were they towards the front of the bus or were there people in the very back? They were in the front of the bus and it was an activity bus. So the back of the bus was relatively unoccupied at that moment? Yes. Okay, so it wasn't as if he was saying, I've decided I like the people at the front of the bus better. No. In the back of the bus, people's been nice knowing him. No, no. It was a deliberate decision to impact the oncoming vehicle. At a place where he believed there were no students present. At a spot where, I don't know what he believed. Okay, right, we don't. Yes, yes. Okay, all right. So he impacts the vehicle, then he exits the vehicle. Well wasn't, wasn't the plan to their left a plan to avoid or minimize harm to people in the bus? No. The plan to their left was an affirmative breach of the law. When he is to stay in the right lane. You travel in the right lane, you do not travel in the left. Now he had noticed that there were several vehicles on the road that night who in the face of that danger, pulled over to the right as far as they could pull over. He persisted. We have, we have a substantive due process. Yes. Correct? Yes, a danger creation. Okay, well that was my next question. It does seem that your argument on appeal is a danger creation theory. Yes, sir. Is that correct? And it's limited to danger creation. Well, it is limited to danger creation. However, in Mr. Waddell's brief, there was a question of special relationship. Before this court, there has never been an affirmative actor who was a state actor who caused damage in the face of private violence. Okay, but I'm asking about your briefing. Yes. And your briefing is danger creation. Yes. Yes, Your Honor. Yes, Your Honor. Okay, and for danger creation, do you need to allege and prove conduct that shocks the conscience? Absolutely. Absolutely. And that is to be taken as a whole. And when Mr. Scoggins impacted that oncoming vehicle, he exited the bus. Rendy was seated or standing on the steps of the bus at the whole time they were coming back from the game. That is a violation of law. Everyone knows that when the bus is in motion, the children have to be in the seat. That's the only zone on the bus that is protected. Well, again, Counsel, let me just come back to, okay, substantive due process, danger creation shocks the conscience. Yes. Okay, to establish that claim, don't you also have to allege and prove that the defendant intended to cause the harm? had a countdown, five, four, three, two, one, brace yourself, and then actually impacted. And all the time, Rendy was standing in the steps of the bus while he was planning that impact, while he was communicating that impact to the student, while he actually impacted. Rendy was there. He didn't require her to be there, did he? There was no requirement. He allowed her to be there, but he didn't order her to be there. Which is an affirmative act. That wasn't my question. My question is simple fact. He did not require Rendy to be in that stairwell, did he? He allowed her to be in that stairwell. He allowed her, but he didn't require her. He allowed her, and that is an affirmative act as well. So, even if he did not require her to be there, at the point that he decided to impact, he should have said, get in your seat, I'm going to impact. But all the time, while he planned to impact, she was there and she was in the most danger. And it happened to be that at the crash point, the car, the oncoming car, the private actor, John TallBear, hit her directly where she was standing, on the stairs. You know, you said that it's the same thing to allow her to be there as to require her to be there. But Deshaney, and there are cases in the 10th Circuit after that, I think disagree with that. They say that you have no right to have the state protect you. Your only right is to not have the state affirmatively seek to injure you. So I think you're on thin ice in saying that allowing her to be there is the same as requiring her to be there. And that is a special relationship analysis, what you are referring to respectfully, Your Honor. That is not a danger creation analysis. The danger creation analysis requires six elements, as you, Judge Eagle, and you, Judge Mathison, well know. You have authored some of the most compelling cases in this area of danger creation. The first element, they have to be a member of a limited and specifically definable group.  The defendant's conduct was put at a substantial and serious risk of immediate proximate harm. When that bus impacted, he knew what the consequences would be. Now, when he made that impact, he got off the bus, he called the principal, and the principal immediately came. He lived about two minutes away. The principal inquired of Mr. Scoggins, how many people were on the bus, what's their names? He listened. The principal finds everybody except Wendy. The principal goes back to Mr. Scoggins and says, I didn't find her where you said she was. Where is she? Mr. Scoggins directed her somewhere else. Although these facts do sound horrific, I think unquestionably, under Silkwood, Wendy had already tragically passed away. So the events that took place after Wendy passed away could obviously not have caused her death. And under Silkwood, which is our precedent, aren't we compelled to disregard those facts post death? No, because under a danger relation, under a danger creation analysis, the facts of the totality of the circumstances, and while that bus was still intact, Mr. Scoggins was affirmatively deceiving the principal about the whereabouts of Wendy. Because if he would have told the principal, the principal would have said, she's on the bus, where? And he would have said, she's on the steps, where? But there's nothing that the principal could have done, tragically, to bring Wendy back to life. We could have gotten her off the bus. But she was already dead. We have a right to our bodily integrity, even at death, because there are laws that say that you cannot desecrate a body. So we had the right to recover her whole and bury her. And that taken in the totality of circumstances is shocking to the conscience. And then to add, after Wendy's funeral, Mr. Scoggins gets all of the softball players on the team together and says, it's our secret. Don't tell anyone. Don't tell anyone about my plan to impact. Don't tell anyone where Wendy was sitting. If that is an evidence of intent and a guilty mind, then what is? And what, if that, if those facts are not shocking to this conscience. Counsel, could I just ask you about your claim against the district? If this panel decides the amended complaint doesn't allege a constitutional violation against Mr. Scoggins, then does your substantive due process claim against the district fail? No, Your Honor. Because those, those, he was an act, he was an employee of that district at the time it happened. And so it might impact the immunity, the qualified immunity argument, but it would not impact our deliberate indifference argument or our danger creation. Your Honor, I see I have three minutes and 23 seconds left over. May I reserve? Yes. Or, before I forget, this was on dismissal, and we believe that we have plenty of evidence supported in the amended complaint that would defeat a 12B6 motion. Good morning. May it please the Court, Andy Fugate to Justin Clyburn for the defendants. I'd like to address one point that was raised by counsel concerning the conduct of Mr. Scoggins, alleged conduct by Mr. Scoggins at the funeral. That allegation wasn't in the amended complaint. That allegation about anything that he said to students at the funeral about a plan didn't come up until February here, their briefing sheet. That comment, that allegation should be disregarded. If it pleases the Court, I would like to just address the issues about the claims against the district. My co-counsel addressed the claims involving Mr. Scoggins, and I hope to be very brief. The facts here are obviously very tragic. We have death of a student, injury to others. But taking the allegations as they are, what we have is negligence on the part of our employee, our client, the bus driver, under adverse circumstances, and negligence by the other driver, John Talbot. That's really what this is. If it's negligence, you're going to prevail. But let's just hypothesize for a minute that the bus driver, Scoggins, was negligent. But let's also postulate that there was, and there's no evidence of this, but just for hypothetical, that at a school board meeting they said, we know that forcing drivers to get up early in the morning and spend all day being the sports director or the coach and then driving back late at night is dangerous. And we know there's going to be some accidents on our Oklahoma roads that are two lanes some places, but we just can't afford it. So we're going to do it anyhow. If that evidence had come in, could the district have had liability even with Mr. Scoggins himself getting dismissed either on qualified immunity or on the merits? Respectfully, Your Honor, not without more allegations. Some allegation that connects what the board knew and voted on with the facts of the accident. As you, I believe, commented earlier, there was nothing in the allegations, the minute complaint, or even in the allegations that the district court allowed in response to the motion to dismiss, of anything connecting any board action and the facts of this accident. I think that's my understanding of the record as well, and I don't quarrel with that. I just wonder if dismissing Scoggins is just the end of the inquiry, or does the inquiry progress to the board? I think, with respect, Your Honor, it's the end of the inquiry here because there aren't any more allegations to tie what Mr. Scoggins did, even if he's out of the case. As a matter of law, it wouldn't necessarily terminate the inquiry as to the board. Not necessarily, I agree, Your Honor. Can I probe that a little bit, Mr. Fugate? So, hypothetically, let's say that there's a 25-year-old young man who applies to the Konawa School District to be the softball coach. He or she has never driven a bus, never driven an SUV, never driven anything other than a small compact vehicle. In the interview, the principal says, Now, you understand, young man, that you're going to be obligated to drive the junior high kids to all of these rural places in Oklahoma. And he says, fine. Do you feel comfortable in driving a bus? No, I feel horribly uncomfortable. Well, that's fine. You've got the job, and you're going to be driving the bus. And now, it's certainly, if that young man becomes in the position of Mr. Scoggins, I think it would be difficult to say that he or she was deliberately indifferent to follow up on Judge Abell's question. But with the school district, even though 13-506-A1 exempts buses transporting students to and from schools, isn't the very notion that somebody with absolutely no capability, no commercial driving devices, no training to drive in the photos was a huge school bus, isn't that at least creating, for purposes of 1286, a reasonable inference that the school district had every reason to believe that there are going to be extenuating circumstances with somebody that was totally ill-equipped to have the lives of these junior high school kids in his hands? If those were the facts alleged, that would create a question. It's simply not the facts alleged here. Mr. Scoggins had the requisite CDL, had gone through the training. There's no allegation that he hasn't. The other thing I would point out, Your Honor, is there's no mention of any other bus accident happening at Cottonwall Public Schools, much less of the accident having anything to do with action taken by the Board of Education or the lack of training. No allegations whatsoever. I'm going to make two brief comments and give the rest of my time. Could I just jump in? Why didn't Mr. Scoggins' allowance of Rindy to sit on the floor, stand in the stairwell, when the risk of a head-on collision was imminent, why wouldn't that shock the conscience? I think under the pressure of this Court, cases involving death, intentional death, obviously death is shocking. His conduct under these circumstances can't be considered shocking because, based on the allegations, he's attempting to make a difficult decision at a bad time. He didn't intend, even as alleged, to harm her personally. He intended to get that bus, as alleged, out of the way of the oncoming vehicle. And, you know, I think there's, obviously, they've added allegations, again, even before this Court, to what people knew before how far in advance they knew the bus was coming. As alleged, he had very little time to make a decision. Well, let me just change the question a bit. If his conduct in allowing Rindy to be in that position is more than negligent, it's reckless, at the pleading stage, why doesn't that nudge things over to shock the conscience? I don't believe that it goes quite far enough, Your Honor. Well, would you agree that it's reckless? It may have been reckless. It wasn't clearly alleged that way. But they alleged he was making a choice. He apparently chose wrong. I don't consider that reckless at the time. That's all we have to go on. If I may make two points, we don't even get to the shock the conscience analysis here because there are insufficient allegations of affirmative act by the Board that created immediate harm, or the likelihood of immediate harm to anybody. And the second thing is the conduct of Mr. TallBear was not private violence. There's no allegation of deliberateness on his part. As the District Court found, it was either negligence or gross negligence. I'll cede the rest of my time to my counsel. Thank you. May it please the Court, my name is Justin Clyburn, and I will be arguing for Mr. Joseph Scoggins' appellate in this case. Your Honors, the trial court correctly grants Mr. Scoggins qualified immunity because the facts of the amended complaint did not plausibly state a constitutional claim against him. And even if it had, there's no clearly established right that was pleaded in the amended complaint that Mr. Scoggins violated. For the trial court to have denied Mr. Scoggins qualified immunity, they would have had to find that he violated one or more of Rendy's federal statutory or constitutional rights, and that that right was clearly established at the time that he violated it. Now the appellant, they argue that the first prong is satisfied because Mr. Scoggins violated state and federal driving regulations. But they don't elaborate on what right those state and federal driving regulations convey on passengers such as Rendy. And they believe the second prong is satisfied. Could it be clearly established that you violated some state or even municipal law? Is that all that's required, or does clearly established mean a constitutional right, clearly established? It's my understanding that there must be a Tenth Circuit opinion stating that this is a well-established constitutional violation that you should have been aware of. So the fact that there's a violation of an ordinance, even if there was such a violation, isn't the question. The question is, was there a clearly established constitutional right? Correct. And that leads me to my second argument. They believe the second prong is satisfied because those driving regulations have been in force for decades. But, again, the question is not whether the regulations have been in force for decades or whether they are clearly established, but whether there's a constitutional right under these facts that was clearly established that Mr. Scoggins should have been aware of in this circuit. Your Honor, you wrote in Olrid v. Harder, the Supreme Court's concern that Section 1983 not replace state tort law. And that's what we believe the concern is here. The defendants did not move to dismiss the appellant's common law negligence claims. We believe that their written complaint clearly stated a claim for state law negligence and that it should be decided in the District Court of Seminole County in Oklahoma. I would argue that the danger here is finding... Well, you've got to be careful what you ask for there. That county is probably pretty invested in this accident, I would think. I would believe they are, but we have no reason to believe that we would not get a fair shot. The danger is that finding that driving regulations convey this federal right upon passengers would turn every school bus accident into a Section 1983 claim. And the federal courts would be inundated with these school bus accidents disguised as civil rights violations. Immunity aside, however, I don't believe that the admitted complaint actually stated a plausible claim against Mr. Scoggins under the danger creation theory. As Mr. Fugate alluded to, in order to state a prima facie case, there needs to be affirmative conduct and private violence. The deliberateness required under the Due Process Clause, which only protects against deliberately wrongful government conduct, is an intent to harm or an intent to place the plaintiff at risk of harm. And I believe that the admitted complaint clearly states that Mr. Scoggins attempted to avoid the accident by turning left. Now, for reasons that are not under review today, we can't discuss why he went left instead of right. But under the facts of the admitted complaint, it's clear that in that instance, he felt that was the best choice because there were no girls at the back of the bus, this man was not leaving the lane, and if he went to the left, the worst that could happen if this guy kept going straight is he'd clip the back of the bus. Unfortunately, Mr. TallBear corrected, trying to avoid the accident himself, and they collided in the northbound lane. Is there a scenario, even though you would question dispute that it existed here, where the conduct could be so reckless and so indefensible that it really could be considered deliberate indifference? For example, hypothetically, if a bus driver was trying to commit suicide with a busload of junior high girls, I don't think you would question whether that was deliberate indifference. Would you agree with that? I would agree with that, Your Honor. So where do we draw the line? It was to say that, well, he couldn't have guessed that Mr. TallBear would have corrected, would have gone back to the right lane. Well, why not? Of course the driver, when he sees that he's going straight into a huge school bus, might try to do the same thing that Mr. Scoggins did. And so why isn't that so reckless, that it really was with, maybe not with a purposeful intent, but with knowledge that the consequences are so likely, that it really does create a reasonable inference of intent, the fact that he veered left when it was obvious that whoever was in that other vehicle, TallBear's vehicle, that he was going to veer right? Your Honor, I don't believe that the facts of the admitted complaint establish that it was obvious that Mr. TallBear would not veer right. As the plaintiffs have alleged throughout the briefing, he was in that lane. He was not moving from that lane. It was clear that he was going to be continuing northbound in the southbound lane. And I believe that there are circumstances that would elicit a fine of deliberate indifference. There could be facts that support that, but I don't believe they're here based on the plain facts of the admitted complaint. I see that my time is almost up, Your Honors. I would just like to conclude with the appellant has added quite a few facts along the way in this case. And even this morning, including that Mr. Scoggins was driving a school bus vehicle at five in the morning and teaching all day, that was not in the admitted complaint and it's factually incorrect. There was no school that day. Mr. Scoggins would respectfully ask that you affirm the district court's holding or ruling ranking him qualified immunity. Thank you. Thank you, Counsel. We have some rebuttal time. Thank you. We alleged in our complaint that the school board regularly votes to allow their drivers to drive 15 hours or more in excess of federal regulation. Now, the federal regulation, though, under 13-506-A1 does not apply to buses to and from school. And it wasn't to and from school. This was from an activity. To? He was going to drive them home or was he going to drive them to the junior high school? This was an activity to and from school. But where was he going to the school? He was going to school. But the to was to a softball game, which was an hour away. So he wasn't going to and from school. He was going to the softball game, back to school. But the statute says that the exemption is for a motor vehicle transporting only school children and teachers to or from school. Yes. And so he was driving it to school. And that anticipates that eight-hour school day from eight to three when school children are out, are in school. Why does it anticipate that? Excuse me? Why does it anticipate that? It's not so limited. Because the federal statutes, the federal national safety standards concerning commercial drivers who transport passengers as part of their duties at any part of the day, then their 15-hour limit is in place. So we're not talking. It could have still exceeded the eight hours, but not exceeded 15 hours. And it doesn't attach until it's after more than 15 hours when part of your duties include transporting people. Transporting, and in this case, these people were students. Was there a dispute here about whether it was more than 15 hours? It was 14 hours and 11 minutes when the crash happened. It would have been more than 15 hours if he would have gotten back to the school, waited for all of the children to be picked up, taken the bus back to the bus yard, and then exited the bus. That's when his duties would have stopped, which would have clearly been in excess of 15 hours. And the school board regularly voted to allow the students to travel with, in violation of that, with coaches, teachers who had worked all day long, and then it is absolutely foreseeable that the driver would try to come back into his lane, perhaps. But what we do know is that at no time did Stoggins pull over to the right, as every other driver on that road did, and reported that conduct to the police. We would ask that this court would reverse, may I conclude? Please conclude. Thank you. We would ask that this court remand this case, reverse the grant of 12B6, and let Randy have her day in court, please. Thank you, counsel. This case will be submitted. I understand that we'll hear from counsel for the school district in the next case, so you are not excused. Ms. Marshall, you may be excused. Oh, yes. Thank you, Your Honor. I'm sorry.